Kevin J. Leichter, Esq. (SBN 154143)
THE LEICHTER FIRM, A Professional Corporation
10203 Santa Monica Boulevard
Fourth Floor
Los Angeles, California 90067
Tel: 310.229.0000
Fax: 310.229.1299
Email: kleichter@theleichterfirm.com

Attorneys for Defendants and
Counterclaim and Third Party Claim Plaintiffs
   DOLORES PRESS, INC. and MELISSA SCOTT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DOC'S DREAM, LLC;<br><br>   Plaintiff and Counterclaim-Defendant<br><br>   vs.<br><br>DOLORES PRESS, INC., MELISSA SCOTT;<br><br>   Defendants and Counterclaim-Plaintiffs<br><br>DOLORES PRESS, INC., MELISSA SCOTT;<br><br>   Third Party Plaintiffs,<br><br>   vs.<br><br>PATRICK ROBINSON, TRUTH SEEKERS, INC., BOBBI JONES, DOES 1-10;<br><br>   Third Party Defendants. | **CASE NO. 2:15-cv-02857-R-PLA**<br><br>**DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIMS AND THIRD PARTY CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

## I.     ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Dolores Press, Inc. ("Dolores Press") and Pastor Melissa Scott ("Pastor Scott") (collectively, "Defendants") answer plaintiff Doc's Dream, LLC's ("Doc's Dream") First Amended Complaint for Declaratory Relief as follows:

### INTRODUCTION

1.      Defendants admit the allegation that Plaintiff's Complaint "seeks a declaration from this Court concerning the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). Defendants admit that, during his lifetime, Dr. Eugene Scott ("Dr. Scott") owned the copyrighted content referred to in the Complaint (the "Works"). Defendants deny the remaining allegations in Paragraph 1.

### PARTIES, JURISDICTION, AND VENUE

2.      Defendants admit the allegation that Plaintiff Doc's Dream, LC is a limited liability company registered in the State of Georgia whose principal place of business is located in Spalding County, Georgia at 64 Windsor Drive, Griffin, GA 30223. Defendants deny the remaining allegations in Paragraph 2.

3.      Defendants admit the allegations in Paragraph 3 of the Complaint.

4.      Defendants admit the allegations in Paragraph 4 of the Complaint.

5.      Defendants admit the allegations in Paragraph 5 of the Complaint.

6.      Defendants admit the allegations in Paragraph 6 of the Complaint.

7.      Defendants admit the allegations in Paragraph 7 of the Complaint.

8.      Defendants admit the allegations in Paragraph 8 of the Complaint.

### FACTUAL BACKGROUND

9.      Defendants admit the allegations in Paragraph 9 of the Complaint.

10.     Defendants admit the allegations in Paragraph 10 of the Complaint.

11.     Defendants admit the allegations in Paragraph 11 of the Complaint.

12.     Defendants admit the allegation that Dr. Scott "was a prolific creator of

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

original content including creating a copyrighted archive of video and audio tapes ('the Archive' or 'Archive') which is the subject matter of this dispute[.]" Defendants admit the allegation that "Dr. Scott, during his lifetime, *owned all intellectual property rights* related to said Archive, including all copyrights pursuant thereto, whether said copyrights were registered ("Registered") with the United States Copyright Office ("USCO") or not". Defendants deny the remaining allegations in Paragraph 12 of the Complaint.

13.     Defendants admit the allegations in Paragraph 13 of the Complaint.

14.     Defendants admit the allegation that "Dr. Scott owned the copyrights in the Archive components." Defendants deny the remaining allegations in Paragraph 14 of the Complaint, including Plaintiff's mischaracterization of Dr. Scott's website, statements, and intentions.

15.     Defendants deny the allegations in Paragraph 15 of the Complaint, including Plaintiff's mischaracterization of Dr. Scott's website and intentions.

16.     Defendants deny the allegations in Paragraph 16 of the Complaint, including Plaintiff's mischaracterization of Dr. Scott's website, statement, and intentions.

17.     Defendants admit that Dr. Scott owned the copyright rights in the Works. Defendants deny the remaining allegations in Paragraph 17 of the Complaint, including Plaintiff's mischaracterization of Dr. Scott's website, statement, and intentions.

18.     Defendants admit that Dr. Scott owned the copyright rights in the Works and openly claimed ownership in the copyright rights of the Works. Defendants deny the remaining allegations in Paragraph 18 of the Complaint, including Plaintiff's mischaracterization of Dr. Scott's website, statement, and intentions.

19.     Defendants deny the allegations in Paragraph 19 of the Complaint.

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

20.     Defendants deny the allegations in Paragraph 20 of the Complaint.

21.     Defendants deny the allegations in Paragraph 21 of the Complaint, including Plaintiff's mischaracterization of Dr. Scott's statements and intentions.

### Count I – Declaratory Judgment

22.     Defendants deny the allegations in Paragraph 22 of the Complaint.

23.     Defendants admit the allegations in Paragraph 23 of the Complaint.

24.     Defendants deny the allegations in Paragraph 24 of the Complaint.

25.     Defendants deny the allegations in Paragraph 25 of the Complaint.

26.     Defendants deny the allegations in Paragraph 26 of the Complaint.

27.     Defendants deny the allegations in Paragraph 27 of the Complaint.

28.     Defendants deny the allegations in Paragraph 28 of the Complaint.

29.     Defendants deny the allegations in Paragraph 29 of the Complaint.

30.     Defendants admit that an actual case or controversy exists between Plaintiff and Defendants and that Defendants have sent cease and desist letters to Plaintiff threatening to sue Plaintiff for Plaintiff's ongoing and willful copyright infringement.  Defendants deny the remaining allegations in Paragraph 30 of the Complaint.

31.     Defendants deny the allegations in Paragraph 31 of the Complaint.

32.     Defendants deny the allegations in Paragraph 32 of the Complaint.

### PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES

33.     Defendants deny the allegations and request for attorneys' fees in Paragraph 33 of the Complaint and assert that Plaintiff is not entitled to the relief requested.

### PLAINTIFF'S PRAYER FOR RELIEF

### Count I – Declaratory Judgment

34.     Defendants deny the allegations and request for relief in Paragraph (A) of the Plaintiff's Prayer for Relief and assert that Plaintiff is not entitled to the relief

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

1    requested.

2          35.    Defendants deny the allegations and request for relief in Paragraph (B)

3    of the Plaintiff's Prayer for Relief and assert that Plaintiff is not entitled to the relief

4    requested.

5          36.    Defendants deny the allegations and request for relief in Paragraph (C)

6    of the Plaintiff's Prayer for Relief and assert that Plaintiff is not entitled to the relief

7    requested.

8          37.    Defendants deny the allegations and request for relief in Paragraph (D)

9    of the Plaintiff's Prayer for Relief and assert that Plaintiff is not entitled to the relief

10   requested.

11         38.    Defendants deny the allegations and prayer for relief in Paragraph (E)

12   of the Plaintiff's Prayer for Relief and assert that Plaintiff is not entitled to the relief

13   requested.

14                    ## II.    AFFIRMATIVE DEFENSES

15                    ### First Affirmative Defense

16         39.    Plaintiff's claims are barred in whole or in part because they fail to

17   state a claim upon which relief can be granted.

18                    ### Second Affirmative Defense

19         40.    Plaintiff's claims are barred in whole or in part because Plaintiff lacks

20   standing to assert the claims and/or because the claims are more properly asserted

21   by another.

22                    ### Third Affirmative Defense

23         41.    Plaintiff's claims are barred in whole or in part because Plaintiff's

24   claims are not stand-alone claims, but are instead defenses and compulsory

25   counterclaims to an action (Dolores Press, Inc. v. Robinson et al., United States

26   District Court for the Central District of California, Case No. 2:15-cv-02562-R-

27   PLA, Complaint filed on April 7, 2015) involving Plaintiff that was pending before

28

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY
CLAIMS

this Court when Plaintiff filed its complaint in the above-captioned action on April 17, 2017.

### Fourth Affirmative Defense

42.     Plaintiff's claims are barred in whole or in part because Plaintiff's claims are untimely under the applicable statute of limitations.

### Fifth Affirmative Defense

43.     Plaintiff's claims are barred in whole or in part because they are barred by the doctrine of laches.

### Sixth Affirmative Defense

44.     Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

### Seventh Affirmative Defense

45.     Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

### Eighth Affirmative Defense

46.     Plaintiff's claims are barred in whole or in part because Plaintiff, through its actions or actions of its agents, has unclean hands.

### Ninth Affirmative Defense

47.     Plaintiff's claims are barred in whole or in part because Plaintiff is not entitled to the damages or other relief sought.

### Tenth Affirmative Defense

48.     Plaintiff's claims are barred in whole or in part because neither Defendants nor Dr. Scott have not abandoned their copyright rights.

### Eleventh Affirmative Defense

49.     Because the amended complaint only alleges conclusions of fact and law, Defendants cannot fully anticipate all affirmative defenses that may be applicable to this action.  Accordingly, the right to assert additional affirmative

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

defenses, if and to the extent that such affirmative defenses are applicable, is hereby reserved.

### III.   COUNTERCLAIMS AND THIRD PARTY CLAIMS
<u>SUMMARY OF ALLEGATIONS</u>

50.     Counterclaim-Defendant Doc's Dream, LLC ("Doc's Dream"), and third party defendants Patrick Robinson ("Robinson"), and Truth Seekers Inc. ("Truth Seekers") (collectively, "Robinson Defendants"), and third party defendant Bobbi Jones (collectively, with Robinson Parties, "Counterclaim and Third-Party Claim Defendants") have knowingly, willfully, and maliciously engaged in infringement of copyrights and a trademark owned by Pastor Scott and exclusively licensed to Dolores Press.  At the heart of this matter is the legacy of Dr. Gene Scott ("Dr. Scott"), an influential and beloved minister with a dedicated worldwide following.  Upon his passing, Dr. Scott left all rights to his intellectual property, including the copyright in and to his teachings, to his wife, Pastor Scott, and Pastor Scott exclusively licensed the rights to Dolores Press.

51.     Counterclaim and Third-Party Claim Defendants were aware of Dr. Scott's publicly expressed desire that Pastor Scott continue his ministry. Counterclaim and Third-Party Claim Defendants were aware of Counterclaim-Plaintiffs' rights – copyright and trademark – in the recordings of Dr. Scott and, later, Pastor Scott.  Nonetheless, Counterclaim and Third-Party Claim Defendants chose to display the teachings of Dr. Scott (all of which are the subject of copyright) and display the trademark "Dr. Gene Scott" including via the website www.docsdream.com and the website domata.weebly.com.  Counterclaim and Third-Party Claim Defendants chose to display and disseminate illegal copies of Dr. Scott's sermons knowing that Pastor Scott held the copyright and Dolores Press the exclusive license.  Nonetheless, Counterclaim and Third-Party Claim Defendants engaged in the infringing activity for this express purpose: "[t]o get this legal battle

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

started."

52.     Counterclaim and Third-Party Claim Defendants' infringement has caused irreparable injury to Counterclaim-Plaintiffs.  Counterclaim-Plaintiffs will continue to suffer irreparable injury if Counterclaim and Third-Party Claim Defendants are not enjoined from further copying and distribution of the protected sermons and the trademark.

## JURISDICTION AND VENUE

53.     Counterclaim-Plaintiffs bring this action for copyright infringement under the Copyright Act, 17 U.S.C. section 101, *et seq*. and for trademark infringement pursuant to 15 U.S.C. section 1114, *et seq*.

54.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1338 and 15 U.S.C. sections 1116 and 1121.

55.     This Court has personal jurisdiction over Counterclaim and Third-Party Claim Defendants because: (1) Counterclaim and Third-Party Claim Defendants purposefully directed their actions toward this forum knowing that Counterclaim-Plaintiffs would suffer injury in this forum, (2) the claims herein arise out of Counterclaim and Third-Party Claim Defendants' forum-related activities, and (3) jurisdiction is reasonable given that Counterclaim and Third-Party Claim Defendants acted with the express purpose of inciting Counterclaim-Plaintiffs into legal action.

56.     Venue is proper pursuant to 28 U.S.C. section 1400 inasmuch as Counterclaim and Third-Party Claim Defendants can be "found" in this District because they have purposefully directed their activities toward Counterclaim-Plaintiffs in this District with knowledge that injury would be suffered in this District.

## PARTIES

57.     Pastor Scott is an individual residing in the state of California, in the

7

County of Los Angeles.  As alleged in further detail below, Pastor Scott is the widow of Dr. Scott.

58.     Pastor Scott is the heir, legatee, and/or devisee of the Intellectual Property (defined below), having received all rights of the author, her late husband, Dr. Scott, in his last will and testament.

59.     Pastor Scott is the owner of all of the pertinent intellectual property rights to the Works of Dr. Scott, including the registered copyrights that the Robinson Defendants have infringed, listed in **Exhibit A,** the pending copyright registration applications that the Robinson Defendants have infringed, listed in **Exhibit B**, both attached hereto (collectively, with the works infringed by Jones, below, the "Works"), and the registered trademark "Dr. Gene Scott," United States Patent and Trademark Office Registration Number 3757067 (the "Mark" and, collectively with the Works, the "Intellectual Property"), the registered copyrights that Jones has infringed, listed in **Exhibit C,** and the pending copyright registration applications that Jones has infringed, listed in **Exhibit D**, both attached hereto (collectively, with the works infringed by the Robinson Parties, above, the "Works").

60.     Dolores Press is a California corporation doing business in California. Dolores Press is the exclusive licensee of all of the pertinent intellectual property rights of Pastor Scott, including the registered copyrights that the Robinson Defendants have infringed, listed in **Exhibit A,** and the pending copyright registration applications that the Robinson Defendants infringed, listed in **Exhibit B**, both attached hereto (collectively, with the works infringed by Jones, below, the "Works"), and the registered trademark "Dr. Gene Scott," United States Patent and Trademark Office Registration Number 3757067 (the "Mark" and, collectively with the Works, the "Intellectual Property"), the registered copyrights that Jones has infringed, listed in **Exhibit C,** and the pending copyright registration applications

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

that Jones has infringed, listed in **Exhibit D**, both attached hereto (collectively, with the works infringed by the Robinson Parties, above, the "Works").

61.     Patrick Robinson is an individual residing in the State of Georgia.  On information and belief, Robinson is the sole owner of both Doc's Dream and Truth Seekers.

62.     Doc's Dream is a limited liability company organized and existing under the laws of the State of Georgia.

63.     Truth Seekers is a corporation organized and existing under the laws of the State of Georgia.

64.     On information and belief, Bobbi Jones is an individual residing in the County of Riverside in the State of California.

65.     Counterclaim-Plaintiffs further allege that each of the counterclaim and third party claim defendants herein identified as DOES 1 through 10 inclusive, is and at all times relevant to this action was, the agent, employee, representative, manager, and/or supervisor of the remaining defendants and was acting within the course and scope of said relationship.  Counterclaim-Plaintiffs further allege that each of the counterclaim and third party claim defendants herein identified as DOES 1 through 10 inclusive, gave consent to, ratified, and authorized the acts alleged herein below of each of the remaining counterclaim and third party claim defendants and/or conspired with each of the remaining counterclaim and third party claim defendants in the perpetration of the acts complained of herein.  Counterclaim-Plaintiffs further allege that each of the counterclaim and third party claim defendants herein identified is responsible and liable to Counterclaim-Plaintiffs in some manner for the acts and occurrences herein complained.  Counterclaim-Plaintiffs will amend these counterclaims to allege their true names and capacities when ascertained.

66.     Counterclaim-Plaintiffs are informed and believe and on that basis

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

1   allege that at all times mentioned herein each of Counterclaim and Third-Party

2   Claim Defendants was the agent and/or alter ego of each of the other Counterclaim

3   and Third-Party Claim Defendants and, in doing the acts alleged in this complaint,

4   were acting within the course and scope of such agency.

5   **FACTS**

6   **Rights in the Intellectual Property**

7       67.    Dr. Scott was an influential and beloved minister.  For decades, Dr.

8   Scott transmitted his sermons via cable, broadcast and satellite television, which

9   sermons were simultaneously recorded, and thereby became works of authorship

10   fixed in a tangible medium of expression under the subject matter of copyright.  Dr.

11   Scott's ministry spread worldwide, reaching hundreds of thousands of devoted

12   followers.  In each broadcast, a copyright notice was prominently displayed, giving

13   notice to viewers of the copyright in the works.

14       68.    Beginning in the late 1990s, Dr. Scott provided access to videos of his

15   sermons over the Internet through his website www.drgenescott.com.  The sermons

16   were available to play through an Internet media player such as Real Player or

17   Windows Media, which were, as a practical matter, the only options for displaying

18   video on the Internet at the time.

19       69.    Both the website and the Works prominently displayed a notice of Dr.

20   Scott's copyright.  Dr. Scott encouraged his congregation to enjoy the sermons and

21   to share the message his teachings, but did not authorize downloading of the

22   sermons for distribution or public dissemination or performance.  A screenshot of

23   the notice of Dr. Scott's copyright stating "©2002 w. euGene Scott All rights

24   reserved" from VF-1302 is attached hereto as **Exhibit E.**  This notice appeared on

25   each of the Works.

26       70.    Dr. Scott was explicitly aware of his copyright rights, and of wanting to

27   assert and maintain, and not abandon, those rights.  On January 20, 1985, Dr. Scott

28

10

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY
CLAIMS

told his congregation:

"No tape recorders in here!  I am really sorry but there can't be; everybody should tell you that.  And please, don't anybody get offended at me.  And ushers, you have to do your job.  And let me tell you why.  I've been known to give people tapes who desperately need them because I want to Word out.  But if we ever knowingly allow, if we ever knowingly allow a reproduction of anything that is said here that is copyrighted without stopping it, the law says we forever lose control of that material.  The one thing that I must –, and lots of you don't know this so that's why I want to take the edge off, and don't anybody be offended because it's just common practice when you are eager to learn to tape.  But I forever lose the copyrighted ability to protect the content of these messages against someone taking them piecemeal and distorting them or caricatured.  You say, 'Well, I wouldn't do that.'  It doesn't matter.  If we ever knowingly allow it, someone can claim they took it.  Now you can take it off the TV; that's okay for your own use because what you are taking has the copyright symbol written on it.  So if it's too tough, go home and wait until this service replays and tape it while it's on the radio.  You can tape it for your own use when it's broadcast.  Supreme Court just decided that.  You can't multiply for others.  But we cannot let anybody tape-record, and while I'm at it let me say that about the banquet coming up.  Because I forever lose the right to protect against distortion and change—not by you—I doubt seriously anybody in here is going to do it, but by people who will say, 'Well it was picked up with your permission in a service.'  You understand me?  You can't tape-record in these live services under any circumstances

11

**DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS**

1    anytime, any place.  Now ushers, be kind and gentle.  You can't

2    explain it as long as I have, but let me say it once and for all: it cannot

3    be done.  Clear?  Now let's carry on."

4        71.    When Dr. Scott began broadcasting on the Internet, and thereafter, he

5    believed it was a method of broadcasting, like radio or television.  He did not

6    envision that using the Internet would allow people to copy the Works.

7        72.    On March 30, 1997, Dr. Scott said to his congregation: "But today

8    marks the beginning, and another note of anniversary on this Easter Sunday.  We are

9    on the Internet, sound and picture.  You can log us in.  … Anywhere on the globe

10   that there's a telephone and a computer that meets those specifications just said, you

11   can pick up us, 24 hours a day, broadcasting now on the Internet.  I think that is the

12   wave of the future, and I got mine hooked up this week as we went through the

13   testing mode last night; turned it on and there I was on the Internet."  He continued,

14   "That's … that's not … that's not just a home page.  We have a home page.  Gene

15   Scott, Dr. Gene Scott organization page and the University Network has a page

16   where you can obtain information [on] how to purchase the books and tapes and

17   things of that nature.  This is 24 hours broadcast on the Internet.  The sound, as I

18   listened last night, it … the sound was the same as any major TV station picking up

19   in town.  As good as any on-air radio station in town."

20                **Dr. Scott Grants Dolores Press Licensing Rights**

21                       **in the Intellectual Property**

22       73.    On August 14, 1995, Dr. Scott entered into a written license agreement

23   with Dolores Press (the "Dr. Scott License Agreement").  A true and correct copy of

24   the Dr. Scott License Agreement is attached hereto as **Exhibit F**.  Pursuant to that

25   agreement, Dr. Scott granted Dolores Press "the exclusive right to market, sell,

26   protect, disseminate, publish and republish, broadcast and rebroadcast, copy, and

27   distribute throughout the world such of Dr. Scott's literary and audio-visual works

28

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY
CLAIMS

as he, in his sole discretion, may from time to time chose to deliver to Dolores Press, Inc."

74.     As was the case with the copyright notices affixed to each of the works, this license evidenced Dr. Scott's assertion of copyright in and to the works and his claim of ownership.

75.     Dr. Scott also clearly told parishioners that they should purchase his Works from Dolores Press.  On January 14, 1985, Dr. Scott said to his congregation, "God has told you how you ought to give, you ought to tithe, tithes and offerings and I can tell you if you understand tithing, and I've taught on it, you ought to get the whole series of tapes on it.  Get the set of tapes on giving.  What are they, $59.95?  Get the one on giving if you want to know about tithing.  There are twelve tapes in there.  Now I'm telling you you won't buy them from us you know, make the check out to Dolores Press, you can send it to our address to Gene Scott but you buy from Dolores Press."

76.     Dr. Scott repeatedly encouraged parishioners to buy his Works from Dolores Press, explaining that Dolores Press was a for-profit wholly owned subsidiary of the church.  On December 24, 1989, Dr. Scott said to his congregation: "Now to you who have it turn with me to page 1083.  Well how do I get one of those?  I don't even know the price.  What is the price?  $85.35 includes the tax. This is pretty heavy.  What do you think that will cost to ship?  Five dollars to ship it?  Just send ninety dollars.  Now, if they can, over at the transmitter or at the studio, put an address up:  Dolores Press.  Don't write the check to Dr. Gene Scott and don't write it to the church because the church doesn't sell anything.  The church owns all the stock of Dolores Press.  It's a wholly owned subsidiary but it pays taxes, which is the proper way to sell things, both sales and income tax.  We charge you the sales tax we pay the income tax, which ain't much.  …  Ninety dollars.  Just think you can save about five dollars, by running over to the bookstore

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

1   when we finish and picking them up."

2   77.   On December 31, 1989, Dr. Scott said to his congregation: "Dolores

3   Press is a taxpaying subsidiary that sells any item that we recommend.  And make

4   your check to Dolores Press for $90, it will be shipped to you."

5   78.   On June 8, 2003, Dr. Scott, speaking of a book, explained to his

6   congregation: "They're a hundred dollars from the book store.  We don't sell; the

7   church owns a wholly-owned, profit-making stock corporation called Dolores Press.

8   And when you order books from them – they're a tax-paying entity.  We only

9   receive contributions as a worshipful act in stating what you think the teaching's

10  worth by doing it God's way."

11  **Dr. Scott Passes Away and Transfers His Rights in the**

12  **Intellectual Property to Pastor Scott**

13  79.   Dr. Scott married Pastor Scott in 2000.  In 2004, he publicly stated that

14  he never thought he would find a person "exactly like me" but that "God gave me

15  Melissa."  However, Dr. Scott had found more than just a soul mate, he had found a

16  person united in and dedicated to the ministry.  Melissa Scott was ordained by the

17  ministry and became "Pastor Scott."

18  80.   As he neared the end of his life, Dr. Scott contemplated the

19  continuation of the ministry.  He publicly stated, "This church is lucky that Melissa

20  came along."  Dr. Scott's support of Pastor Scott was unequivocal.  He publicly

21  proclaimed Pastor Scott as his sole choice for the "perpetuation of this ministry,"

22  "the next pastor . . . choice is made . . . end of discussion."  Dr. Scott praised Pastor

23  Scott for her "sheer, plain, raw brain power" and stated, "I've never met a person as

24  smart as my wife."

25  81.   Dr. Scott died on February 21, 2005.  Consistent with his publicly

26  expressed wishes, he left his ministry in the hands of Pastor Scott.  Dr. Scott

27  bequeathed all of his rights in the Works to Pastor Scott, who was a minister in her

28

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY
CLAIMS

own right, having been ordained in 1998.  A true and correct (redacted) copy Dr.

Scott's last will and testament (the "Will") is attached hereto as **Exhibit G**.

Specifically, Dr. Scott's Will states: "I give the residue of my estate . . . and

specifically including but not limited [to] all copyrights related to my teaching,

whether in print form, in audio form, in video form, on DVD, or on any other form

of publication (whether available now or in the future), to my wife is she survives

me, outright and free of trust."

82.     Again, by means of his will, Dr. Scott evidenced his claim of copyright

in and to the works and ownership therein.

<u>**Pastor Scott Grants Dolores Press Licensing Rights**</u>

<u>**in the Intellectual Property**</u>

83.     Following Dr. Scott's death, and having received his rights by

testamentary transfer, on March 7, 2005, Pastor Scott entered into a license

agreement with Dolores Press (the "Pastor Scott License Agreement").  A true and

correct copy of the Pastor Scott License Agreement is attached hereto as **Exhibit H**.

The Pastor Scott License Agreement granted Dolores Press "a revocable, exclusive,

worldwide, royalty-free . . . right and license . . . to reproduce, distribute copies of,

publish, sell, distribute, display, broadcast and transmit the Licensed Works [defined

as 'All audio and visual works of Dr. Gene Scott and Pastor Melissa Scott'] . . . and

. . . to use the Marks [defined to include 'Dr. Gene Scott®'] only in connection with

Licensee's copying, publishing, selling, distributing, displaying, broadcasting, and

transmitting of the Licensed Works."  The license thereby given was intended to

continue the prior practice that obtained prior to Dr. Scott's passing, by means of

which Dolores Press would continue to be the exclusive publisher of the Works

whilst original copyright ownership (and other rights, such as the right to make

derivative works) would be reserved to Pastor Scott.

84.     Currently, Dolores Press sells copies of certain of the Works for a fee.

15

**DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS**

It is and always has been Pastor Scott's goal to collect and organize the majority of Dr. Scott's sermons and writings to make his teachings more accessible to followers of the ministry.  In furtherance of this endeavor, Pastor Scott granted an exclusive license to all rights in the Works to Dolores Press with the intention that Counterclaim-Plaintiffs would catalog and index the Works, which number in the thousands.  Counterclaim-Plaintiffs have invested a substantial amount of time and money in the project.  In addition to the monetary expense, a group of dedicated individuals has devoted hundreds of hours of love and labor to the project. Counterclaim and Third-Party Claim Defendants' infringement is in derogation of the efforts of Counterclaim-Plaintiffs to preserve and promote the teachings of Dr. Scott as embodied in the Works, and in derogation of its right to control the exercise of the exclusive rights granted copyright owners under Section 106 of the Copyright Act.

### Robinson Defendants Request, and Are Denied, Permission from Counterclaim-Plaintiffs to Display the Intellectual Property

85.    In January 2014, Robinson sent a letter to Pastor Scott.  In his letter, Robinson specifically and expressly acknowledged that Pastor Scott "own[s] the rights to the teaching" of Dr. Scott.  Consistent with his stated understanding, Robinson wrote to request authority to display certain of the Works that Robinson had obtained by means of the Internet or by making digital copies of videotapes purchased from Dr. Scott.  A true and correct copy of Robinson's January 2014 letter is attached hereto as **Exhibit I**.

86.    Robinson's January 2014 letter further admitted that Robinson had consulted a "copyright lawyer" who had advised him to seek authority to display the Works.  Robinson intimated that if Pastor Scott would not grant the authority Robinson would "go to court to obtain authority," presumably under a claim of religious exemption.

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

87.     Sometime after his January 2014 letter, Robinson posted several videos online under the titles "Furious Fund" and "Furious 3."  These videos included several false and misleading statements about Counterclaim-Plaintiffs' legal rights, including that Pastor Scott was only an "administrative" pastor with no authority to carry on the ministry of Dr. Scott and that Truth Seekers was a subsidiary of Dr. Scott's Church.

88.     The videos also solicited donations under the title "Furious Fund" for the express purpose of funding a legal action against Counterclaim-Plaintiffs.

89.     Finally, the videos encouraged viewers to disseminate any copies of the Works in their possession in opposition to the rights of Counterclaim-Plaintiffs.

90.     On April 18, 2014, counsel for Counterclaim-Plaintiffs responded to Robinson.  That letter confirmed to Robinson that Pastor Scott was the owner of the copyright to the Works and that Dolores Press was the exclusive licensee of all the rights to the Works and the Mark.  The letter warned that any unauthorized use of either the Works or the Mark would constitute infringing activity, and debunked any claimed religious exemption.  The letter further addressed and corrected the misstatements in Robinson's posted videos, including statements that Truth Seekers was associated in any way with Pastor Scott's church.  A true and correct copy of the response is attached hereto as **Exhibit J**.

91.     Robinson did not respect Pastor Scott's copyright.  Even worse, it soon became apparent that Robinson did not respect Pastor Scott herself— toward whom personal malice and enmity has been directed by Counterclaim and Third-Party Claim Defendants – or, for that matter, Dr. Scott's publicly pronounced choice for the "perpetuation of [his] ministry."

92.     Robinson manifested his personal vitriol for Pastor Scott in his April 28, 2014 "response" to counsel's letter via a YouTube video entitled "The FUMS Fund – an acronym defined therein as 'The Future of My Fellow Scottie's' Fund"

but which can reasonably be taken as having another meaning.  He accused Pastor Scott—an ordained minister and leader of a worldwide ministry—of being a demon and an agent of the Devil.  Robinson stated his disavowal of Pastor Scott and encouraged his viewers—members of Pastor Scott's ministry—to disavow her as well.  Robinson publicly accused Pastor Scott of "betraying the trust" of Dr. Scott, of "snowing" Dr. Scott into passing his ministry to her, and of having a plan to "eliminate" the teachings of her late husband.  Robinson called Counterclaim-Plaintiffs "sons of Belial" – another name for the Devil—and accused Pastor Scott of "working on Satan's side" and being "used by Satan."  The video can be viewed at https://www.youtube.com/watch?v=Q891qGt0ujQ.

93.     In the video, Robinson issued a call to arms "urging" his viewers to disseminate the teachings of Dr. Scott despite the legal rights of Counterclaim-Plaintiffs.  The video also solicited viewers to contribute to the FUMS Fund to bankroll a legal action against Counterclaim-Plaintiffs.

94.     On September 24, 2014, Robinson wrote to Counterclaim-Plaintiffs.  A true and correct copy of Robinson's September 24, 2014 letter is attached hereto as **Exhibit K**.

**Counterclaim-Plaintiffs Deny Robinson Defendants Permission to Display the Intellectual Property, And Robinson Defendants Do So Anyway**

95.     In his letter, Robinson stated his intent to go live on October 31, 2014, with a website he had created for the express purpose of displaying his "personal library" of illegal copies of the Works.  Robinson attempted to pressure Pastor Scott into agreeing to the use by accusing her of betraying the trust of her late husband, Dr. Scott, and of being an "earthly agent" (i.e. an agent of the Devil) attempting to suppress Dr. Scott's teachings.  Robinson further dared Dolores Press to exercise its rights to the Intellectual Property and thereby confer upon Robinson the "standing" to sue "so we can get the ball rolling in this legal battle."

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

96.     Robinson did go live with the website www.docsdream.com (the "Docs Dream Website") on October 31, 2014.  Truth Seekers provided a link to the Docs Dream Website on its own website truthseekersministries.org.

### Robinson Defendants' Docs Dream Website Unlawfully Shared and Displayed the Intellectual Property

97.     The "About" section of the Docs Dream Website (a copy of which is attached hereto as **Exhibit L**) stated, "To get this legal battle started, either she [Pastor Scott] has to sue me, or we have to make her send us a cease and decist [sic] letter, so we can take her on offensively, *and sharing Doc's* [Dr. Scott's] *stuff seemed to be the best way for us to get that to happen*."  (Emphasis added.)  The Docs Dream Website further stated that Doc's Dream, LLC "was formed to be the umbrella of protection that covers this Doc's Dream website," in other words, to shelter Robinson from liability for his infringing activities.

98.     The Docs Dream Website contained a staggering number of infringements of Dr. Scott's Works.  The Docs Dream Website organized the Works into three categories, Audio, Video, and Documents.  A true and correct copy of a print out of the Docs Dream Website showing the categories of the Works included is attached hereto as **Exhibit M**.

99.     The Audio section contains categories of audio works with headings including Atlantis, Basic Christianity, Bible Characters, Abraham, David, Gideon, Jonah, Joseph, Christmas, Church History, Communion, Demonology, Easter Traditions, Ephesians, Faith, Faith Heroes, Galatians, Gene Scott Pulpit, Giving, God Is My Refuge, Gospel in the Stars, Grace vs. Law, Great Pyramid, Hebrews, History of the British Kings, James, Mean Gene Review, Lost Tribes of Israel, Mysteries, Old Testament, Deuteronomy, Exodus, Genesis, Nehemiah, Psalms, Zechariah, Pastoral Nuggets, Mothers Day, Nitro Pills, Christ's Call to Courage, Deuteronomy 33 – Tough Shoes, Names of God, The Potter's House, Psalm 37 –

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

Fret Not, Psalm 77 – At God's Right Hand, Psalm 84 – Valley of Weeping, Miscellaneous Nuggets, Philippians, An Excursion in Praise, Reformation, Resurrection of Christ, Revelation, Romans, Spiritual Warfare, UFO's, Uncommon Man, War in the Gulf, Zechariah, and more.

100.    The Audio section contained 40 categories, each of which contained numerous audio files.  For instance, the "Atlantis" category contained 24 infringing audio recordings.  If consistent across each category, the Audio section alone would include more than 900 infringing copies of the Works.

101.    By way of example, VF-1057 Basic Christianity Defined: God's Purposes for the Church, copyright registration number is PA0001954440, is a talk given by Dr. Gene Scott on May 25, 1997.  This talk was shared, posted, and/or distributed through the Docs Dream Website, in the site's Student Audio Basic Christianity section.

102.    Many other works, for which Pastor Scott holds valid copyright registrations, were also shared, posted, and/or distributed through the Docs Dream Website, including copyright registration numbers PA0001950070, PA0001950072, PA0001950074, PA0001950082, PA0001950083, PA0001950086, PA0001950087, PA0001950088, PA0001950089, PA0001950090, PA0001950091, PA0001950092, PA0001950095, PA0001950096, PA0001950097, PA0001950098, PA0001950099, PA0001950100, PA0001950101, PA0001950102, PA0001950103, PA0001950104, PA0001950105, PA0001950107, PA0001950108, PA0001950109, PA0001950110, PA0001950111, PA0001950112, PA0001950114, PA0001950115, PA0001950116, PA0001951744, PA0001951746, PA0001951747, PA0001951749, PA0001951750, PA0001951751, PA0001951752, PA0001951753, PA0001951754, PA0001952461, PA0001952462, PA0001952463, PA0001952464, PA0001952465, PA0001952466, PA0001952467, PA0001952469, PA0001952471, PA0001952473, PA0001952476, PA0001952477, PA0001952479, PA0001952481, PA0001952482, PA0001952484,

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

PA0001952493, PA0001952494, PA0001952495, PA0001952500, PA0001952899,
PA0001952900, PA0001952901, PA0001952902, PA0001952903, PA0001952904,
PA0001952905, PA0001952906, PA0001952907, PA0001952908, PA0001952909,
PA0001952910, PA0001952911, PA0001952915, PA0001952916, PA0001952917,
PA0001952918, PA0001952919, PA0001952920, PA0001952922, PA0001953510,
PA0001953511, PA0001953513, PA0001953514, PA0001953515, PA0001953516,
PA0001953517, PA0001953518, PA0001953519, PA0001953520, PA0001953621,
PA0001953622, PA0001953623, PA0001953624, PA0001953625, PA0001953626,
PA0001953627, PA0001953628, PA0001953632, PA0001953633, PA0001953634,
PA0001953635, PA0001953636, PA0001953639, PA0001953640, PA0001953641,
PA0001954439, PA0001954440, PA0001954441, PA0001954442, PA0001954443,
PA0001954444, PA0001954445, PA0001954446, PA0001954448, PA0001954449,
PA0001954477, PA0001954478, PA0001954479, PA0001954480, PA0001954481,
PA0001954537, PA0001954538, PA0001954539, PA0001954541, PA0001954542,
PA0001954543, PA0001954544, PA0001954545, PA0001954547, PA0001954548,
PA0001954549, PA0001954550, PA0001954552, PA0001954553, PA0001955108,
PA0001955109, PA0001955110, PA0001955111, PA0001955112, PA0001955845,
PA0001955846, PA0001955847, PA0001955848, PA0001955849, PA0001955850,
PA0001955852, PA0001955853, PA0001955854, PA0001955855, PA0001955856,
PA0001955857, PA0001955858, PA0001955860, PA0001955861, PA0001955862,
PA0001955863, PA0001955864, PA0001955865, PA0001955867, PA0001955868,
PA0001955872, PA0001955873, PA0001955876, PA0001955878, PA0001955879,
PA0001955880, PA0001955881, PA0001955882, PA0001955883, PA0001955885,
PA0001955886, PA0001955994, PA0001955995, PA0001955996, PA0001955997,
PA0001956000, PA0001956003, PA0001956004, PA0001956007, PA0001956008,
PA0001956010, PA0001956011, PA0001956013, PA0001956015, PA0001956018,
PA0001957880, PA0001957881, PA0001957883, PA0001957884, PA0001957885,

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY
CLAIMS

PA0001957886, PA0001957887, PA0001957888, PA0001957889, PA0001957890,
PA0001957892, PA0001957894, PA0001957895, PA0001957897, PA0001957910,
PA0001960155, PA0001960159, PA0001960200, PA0001960202, PA0001960203,
PA0001960204, PA0001960205, PA0001960206, PA0001960207, PA0001960209,
PA0001960210, PA0001960211, PA0001960213, PA0001960214, PA0001960216,
PA0001960217, PA0001960219, PA0001960220, PA0001960221, PA0001960223,
PA0001960224, PA0001960225, PA0001960226, PA0001960228, PA0001960229,
PA0001960230, PA0001960231, PA0001960232, PA0001960233, PA0001963048,
PA0001963057, PA0001963059, PA0001963069, PA0001969276, RE 931-535, and
RE 931-956.

103.    Robinson Defendants also shared, posted, and/or distributed Works for
which copyright applications are currently pending, including Plato's Dialogue on
Atlantis: From Atlantis to the Eels, an audio file of one of Dr. Scott's talks from
February 8, 1982, which is identified herein and in the copyright application as S-
1006.

104.    Robinson Defendants also shared, posted, and/or distributed many
other Works for which copyright applications are pending, identified herein by
document number (included in the description on each copyright application),
including LFH-155, LFH-112, LFH-81, LFH-82, LFH-84, LFH-91, LFH-92, LFH-
93, LFH-94, LFH-99, S-1071, S-1075, S-1214, S-1233/34, S-1240/41/42, S-
1251/52, S-1260/61, S-1265/66, S-1267/68, S-1269/70, S-1271, S-1288/89, S-1294,
S-1298, S-1302, S-1303/04, S-1307, S-1354, S-1363, S-1416, S-1418, S-1433, S-
1484, S-1561, S-1565, S-1568, S-1593, S-1599, S-1718, S-1755, S-1799, S-1800, S-
1801, S-1803, S-1807, S-1808, S-1810, S-1811, S-1812, S-1817, S-1818, S-1819, S-
1820, S-1823, S-1824, S-1825, S-1831, S-1834, S-1835, S-1838, S-1839, S-1842, S-
1884, S-1891, S-1925, S-1994, S-2010, S-2017, S-2022, S-2033, S-2075, S-2076, S-
2077, S-2079, S-2124, S-2307, S-2325, S-2343, S-2345, S-2346, S-2350, S-2432, S-

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY
CLAIMS

2439, S-2440, S-2569, S-2708, VF-080, VF-084, VF-085, VF-086, VF-087, VF-093, VF-098, VF-1, VF-105, VF-11a, VF-160, VF-161, VF-162, VF-166, VF-168, VF-181, VF-182, VF-184, VF-1c, VF-22, VF-227, VF-231, VF-270, VF-287, VF-289, VF-30a, VF-300, VF-314, VF-315, VF-319, VF-320, VF-345, VF-346, VF-348, VF-363, VF-370, VF-374, VF-375, VF-382, VF-383, VF-384, VF-388, VF-390, VF-398, VF-399, VF-400, VF-410, VF-411, VF-443, VF-452, VF-461, VF-470, VF-543, VF-551, VF-579, VF-582, VF-583, VF-586, VF-593, VF-603, VF-609, VF-612, and VF-740.

105.   Counterclaim-Plaintiffs' protection of their copyrights in the Works for which copyright applications are still pending is actionable, as the Ninth Circuit has held that "receipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)." *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.* (9th Cir. 2010) 606 F.3d 612, 621 (vacating and reversing dismissal against copyright claimant based on pending status of copyright applications).

106.   By way of example, the Video section contains categories including Atlantis, Basic Christianity, Book of Kells, Christmas, Church History, Classics, Communion, Demonology, Easter, Ephesians, Faith, Galatians, Genesis, Giving, Gospel in the Stars, Great Pyramid, Hebrews, Lost Tribes, Mysteries, Nitro Pills, Promises, Prophesy and Revelation, Reformation, Resurrection, Romans, and Spiritual Warfare.

107.   The Video section contained 31 categories and the "Atlantis" category alone contained 15 infringing copies of the Works.  Again, assuming consistency in the number of videos, the Video section of the website contained more than 400 infringing copies of the Works.

108.   The Documents section likewise contained numerous copyrighted documents, many of which (for instance "Gene Scott Bibles") bore Dr. Scott's copyright.

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

109.   On information and belief, and given the sheer number of Robinson Defendants' infringements of Counterclaim-Plaintiffs' registered and pending copyrights, Robinson Defendants infringed several hundred of Counterclaim-Plaintiffs' copyrights in the Works.

110.   Additionally, the Docs Dream Website contained numerous infringing uses of the Mark.

111.   Robinson Defendants published both the Works and the Mark for, among other things, the express purpose of soliciting visitors to contribute to the FUMS Fund.

**Counterclaim-Plaintiffs Attempt to Stop Robinson Defendants' Infringement of Their Rights in the Intellectual Property**

112.   On January 26, 2015, counsel for Counterclaim-Plaintiffs sent a cease and desist letter to Robinson and Doc's Dream, reasserting Counterclaim-Plaintiffs' legal rights to the Works and demanding that the Works be removed from the Docs Dream Website immediately.  In that letter, counsel explained that Doc's Dream did not—as Robinson had previously claimed—qualify for the distance learning exemption to copyright infringement because, among other factors, Doc's Dream was not an accredited educational institution.  A true and correct copy of that letter is attached hereto as **Exhibit N**.

113.   Robinson responded in a January 30, 2015 email, a true and correct copy of which is attached hereto as **Exhibit O**.  Robinson agreed to disable the Docs Dream Website temporarily.  However, Robinson reasserted his belief that he was entitled to display the Works under the distance learning exception through his non-profit Truth Seekers.  He further stated that he would transfer ownership of Doc's Dream to Truth Seekers and reinstate the Docs Dream Website once that had been accomplished.

114.   On or about February 4, 2015, an individual under the screen name of

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

"Rob Tuba" contacted Robinson through his Facebook page.  Rob Tuba inquired as to why the Docs Dream Website was taken down.  Robinson responded acknowledging that he did not have any authority to display the Works unless "I get a way to have TSM [Truth Seekers Ministries] accredited."  A true and correct copy of a print out of the correspondence between Robinson and Rob Tuba is attached hereto as **Exhibit P**.

115.   On information and belief, Robinson, individually and through Doc's Dream and Truth Seekers, continues to disseminate his illegal copies of the Works. As of February 5, 2015, the Docs Dream Website contained a login page apparently allowing access to the Works to registered users.

116.   On January 23, 2016, in the midst of the instant litigation over Robinson Defendants' violation of Counterclaim-Plaintiffs' copyrights in the Works, and without permission from Counterclaim-Plaintiffs, Robinson Defendants published a video recording entitled FUMS 10 on YouTube at https://www.youtube.com/watch?v=hDJJ0hIV-4Q ("FUMS 10"), in which Robinson played a portion of one of the Works, VF-1302.

117.   Counterclaim-Plaintiffs have an application for copyright registration for VF-1302 pending with the US Copyright Office.  The closing frame on VF-1302 contains the following copyright: "©2002 w. euGene Scott All rights reserved."  A true and correct copy of a screenshot of the closing frame of VF-1302 is attached hereto as **Exhibit E**.

118.   As with other videos posted by Robinson Defendants, FUMS 10 also solicited donations for the express purpose of funding legal action against Counterclaim-Plaintiffs.

119.   Counterclaim-Plaintiffs are entitled to injunctive relief for Robinson Defendants' willful, intentional, and purposeful copying and distribution of the Works and infringement of the Mark for their own benefit with full knowledge that

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

such use was without the permission of Counterclaim-Plaintiffs and an infringement of Counterclaim-Plaintiffs' rights.

**Jones Infringes Counterclaim-Plaintiffs' Rights in the Works and Encourages Others to Do the Same**

120.   On or around September 8, 2015, Jones and Scott McNabb ("McNabb") had a conversation on a Facebook group board wherein McNabb expressed interest in posting Dr. Scott videos in his possession.  Jones supported McNabb's desire to post the videos, and offered to help him do so, indicating that she had already done so for "several" other people.

121.   On the same message board thread, another individual, Richard J. Hull, Jr., stated that Jones had filled a flash drive full of Dr. Scott's teachings for him on a prior occasion.

122.   On or around September 30, 2015 Jones posted on a Facebook group board:  "Several months ago I was blessed to receive some 'early Doc' audio messages from one of our group members who will remain anonymous and since it was in a zip file and I'm not the most computer literate and didn't know how to share them without sharing the whole file which would expose the person that shared this file, I just let it sit in my computer without bothering any further, but just this morning, I decided to revisit this file and I clicked on extract just to see if it would extract the file and it worked, so now I'm able to share them on my onedrive for anyone interested and it won't cause any harm to the one who sent them to me. It's always nice to hear messages of Doc that we haven't heard before."

123.   Over the next few days, Jones posted numerous mp4 files of Dr. Scott's teachings, including those titled "Secret 5 – Communion and Presentation at Sunset Mausoleum 1990.mp4," "More Pyramid Teaching.mp4," "More teaching on the Pyramid.mp4," and "Giving.mp4."

124.   Jones has also, on numerous occasions, posted other of the Works and

**DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS**

encouraged others to share, upload, and repost the Works.

125.   On information and belief, Jones continues to disseminate her illegal copies of the Works.

126.   Counterclaim-Plaintiffs are entitled to injunctive relief for Jones' willful, intentional, and purposeful copying and distribution of the Works for her own benefit with full knowledge that such use was without the permission of Plaintiffs and an infringement of Plaintiffs' rights.

**Jones' Website Unlawfully Shares, Displays, and Distributes the Works**

127.   On information and belief, Jones owns and operates the website domata.weebly.com (the "Jones Website").

128.   The Jones Website contains a staggering number of infringements of Dr. Scott's Works.  The Jones Website organized the Works into four overarching categories: The Mysteries of the Universe, The Revealing of Truth, The Message of Truth, and More. A true and correct copy of a screen capture of the Jones Website showing the categories of the Works included is attached hereto as **Exhibit Q.**

129.   Each of the categories contains a large number of subcategories, each of which, in turn, contains a large number of the Works.  True and correct copies of screen captures of the Website showing the subcategories within the categories of the Works included is attached hereto as **Exhibit R.**  For example, "The Message of Truth" category includes the following subcategories:  Basic Christianity, Romans 1, Faith, Giving Gods Way, Communion, God is my Refuge, Old Testament, Mothers Day/Nitro Pill Messages, Bible Characters, Ephesians, Galatians, Hebrews, James, Phillipians, Pastoral Nuggets, The Resurrection of Jesus Christ, Uncommon Man, Messages of G. Campbell Morgan, Bible and Church History Volume 1, Bible and Church History Volume 2, Bible and Church History Volume 3, Bible and Church History Volume 4, and Bible and Church History Volume (Conclusion).

130.   Further, each of the subcategories, which include numerous of Dr.

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

1   Scott's works, is shared and made available without Counterclaim-Plaintiffs'

2   permission.  For example, "Old Testament" contains 68 of the Works.  If consistent

3   across each category, the website would include hundreds of infringing copies of the

4   Works.

5       131.   By way of example, "S-4457 MYSTERIES & WONDERS: Why The

6   Builders Imposed Such Exacting Precision on The Great Pyramid," copyright

7   registration number PA0001952498, is a talk given by Dr. Gene Scott on September

8   22, 1996.  This talk was shared, posted, and/or distributed through the Website in

9   the site's Mysteries of the Universe Vol. 7 section.

10      132.   Many other works, for which Pastor Scott holds valid copyright

11   registrations, were also shared, posted, and/or distributed through the Website,

12   including copyright registration numbers: PA0001950082, PA0001950086,

13   PA0001950087, PA0001950088, PA0001950089, PA0001950090, PA0001950091,

14   PA0001950092, PA0001950095, PA0001950096, PA0001950099, PA0001950101,

15   PA0001950102, PA0001950103, PA0001950104, PA0001950105, PA0001951744,

16   PA0001951746, PA0001952461, PA0001952462, PA0001952464, PA0001952465,

17   PA0001952466, PA0001952467, PA0001952469, PA0001952471, PA0001952473,

18   PA0001952476, PA0001952477, PA0001952479, PA0001952481, PA0001952482,

19   PA0001952484, PA0001952493, PA0001952494, PA0001952500, PA0001952902,

20   PA0001952910, PA0001952911, PA0001952915, PA0001952916, PA0001952917,

21   PA0001952918, PA0001952919, PA0001952920, PA0001952922, PA0001953510,

22   PA0001953511, PA0001953513, PA0001953514, PA0001953515, PA0001953516,

23   PA0001953517, PA0001953518, PA0001953519, PA0001953622, PA0001953625,

24   PA0001953626, PA0001953627, PA0001953628, PA0001953632, PA0001953634,

25   PA0001953635, PA0001953636, PA0001953639, PA0001953640, PA0001953641,

26   PA0001954440, PA0001954441, PA0001954442, PA0001954443, PA0001954444,

27   PA0001954445, PA0001954446, PA0001954448, PA0001954477, PA0001954479,

28

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY
CLAIMS

PA0001954480, PA0001954537, PA0001954542, PA0001954543, PA0001954544, PA0001954545, PA0001954547, PA0001954548, PA0001954549, PA0001954550, PA0001954552, PA0001954553, PA0001955845, PA0001955846, PA0001955847, PA0001955848, PA0001955850, PA0001955852, PA0001955855, PA0001955856, PA0001955857, PA0001955858, PA0001955860, PA0001955861, PA0001955862, PA0001955863, PA0001955864, PA0001955865, PA0001955866, PA0001955867, PA0001955872, PA0001955876, PA0001955878, PA0001955879, PA0001955880, PA0001955881, PA0001955882, PA0001955883, PA0001955885, PA0001955886, PA0001955993, PA0001955994, PA0001955995, PA0001955996, PA0001955997, PA0001956004, PA0001956008, PA0001956011, PA0001956013, PA0001956015, PA0001956018, PA0001957500, PA0001957506, PA0001957881, PA0001957883, PA0001957884, PA0001957885, PA0001957886, PA0001957887, PA0001957888, PA0001957889, PA0001957890, PA0001957892, PA0001957893, PA0001957894, PA0001957895, PA0001957897, PA0001957910, PA0001960200, PA0001960202, PA0001960204, PA0001960205, PA0001960206, PA0001960207, PA0001960209, PA0001960211, PA0001960213, PA0001960214, PA0001960216, PA0001960217, PA0001960219, PA0001960220, PA0001960221, PA0001960223, PA0001960224, PA0001960225, PA0001960226, PA0001960228, PA0001960229, PA0001960232, PA0001960233, PA0001963056, PA0001963057, PA0001963059, PA0001963065, PA0001963069, RE 931-515, RE 931-956, RE 931-959, RE 931-960, PA0001969284, PA0001969275, PA0001969277, PA0001969263, PA0001969261, PA0001969258, PA0001969276, PA0001968485, PA0001968747, PA0001968748, PA0001968752, PA0001968490, PA0001968793, PA0001968496, PA0001968797, PA0001968794, PA0001968471, PA0001968474, PA0001968790, PA0001968559, PA0001968557, PA0001968799, PA0001968699.

133.   Jones also shared, posted, and/or distributed Works for which copyright applications are currently pending, including "S-1203 Debunking Traditions of

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

Christmas The Mystery of Avebury," one of Dr. Scott's talks from October 15, 1982.

134.   Jones also shared, posted, and/or distributed many other Works for which copyright applications are pending, identified herein by document number (included in the description on each copyright application), including LFH-17, LFH-42, LFH-44, LFH-50, LFH-60, LFR-158, LFR-191, LFR-208, S-1005, S-1055, S-1071, S-1077, S-1136, S-1228, S-1229, S-1260/61, S-1265/66, S-1267/68, S-1269-70, S-1271, S-1288/89, S-1294, S-1298, S-1302, S-1319, S-1355, S-1363, S-1372, S-1402, S-1418, S-1509, S-1510, S-1550, S-1568, S-1593, S-1718, S-1744, S-1755, S-1798, S-1803, S-1805, S-1807, S-1808, S-1810, S-1811, S-1812, S-1817, S-1818, S-1819, S-1820, S-1823, S-1824, S-1825, S-1826, S-1829, S-1830, S-1831, S-1834, S-1835, S-1837, S-1838, S-1839, S-1842, S-1858, S-1859, S-1860, S-1868, S-1873, S-1874, S-1884, S-1891, S-1925, S-1980, S-1982, S-1994, S-2010, S-2017, S-2022, S-2033, S-2075, S-2076, S-2077, S-2079, S-2294, S-2307, S-2320, S-2323, S-2343, S-2345, S-2346, S-2350, S-2358, S-2439, S-2440, S-2441, S-2444, S-2569, S-2708, S-2744, S-2747, S-3123, S-3620, S-3622, S-3630, S-3639, S-3650, S-3654, S-3689, S-3827, S-4250, S-4254, S-4410, S-4411, S-4450, S-4714, S-4903, S-971, S-997, VF-080, VF-084, VF-085, VF-086, VF-087, VF-093, VF-098, VF-1, VF-1010, VF-1018, VF-105, VF-1094, VF-1138, VF-128, VF-162, VF-166, VF-168, VF-169, VF-1C, VF-227, VF-25, VF-270, VF-287, VF-300, VF-30A, VF-333, VF-345, VF-346, VF-363, VF-374, VF-375, VF-399, VF-410, VF-44, VF-443, VF-461, VF-470, VF-518, VF-551, VF-579, VF-582, VF-583, VF-593, VF-603, VF-609, VF-61, VF-62, VF-63, VF-65, VF-66, VF-676, VF-823, VF-963, VF-987, VF-995, VF-998.

135.   Counterclaim-Plaintiffs' protection of their copyright rights in the Works for which copyright applications are still pending is actionable, as the Ninth Circuit has held that "receipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)." *Cosmetic Ideas, Inc. v.*

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

*IAC/Interactivecorp.* (9th Cir. 2010) 606 F.3d 612, 621 (vacating and reversing dismissal against copyright claimant based on pending status of copyright applications).

136.   On information and belief, Jones infringed several hundred of the registered copyrights in the Works.

137.   Further, on information and belief, Counterclaim-Plaintiffs believe that Jones is also posting, sharing, and/or distributing others of the Works elsewhere on the internet.

138.   Counterclaim-Plaintiffs are entitled to injunctive relief for Jones' willful, intentional, and purposeful copying and distribution of the Works and infringement of the Mark for her own benefit with full knowledge that such use was without the permission of Counterclaim-Plaintiffs and an infringement of Counterclaim-Plaintiffs' rights.

<u>**COUNTERCLAIM COUNT I**</u>

<u>**COPYRIGHT INFRINGEMENT**</u>

<u>**(17 U.S.C. §§ 106 & 501)**</u>

<u>**(Against Docs Dream)**</u>

139.   Counterclaim-Plaintiffs reallege and incorporate by reference all of the allegations set out in the previous paragraphs of these Counterclaims as if set forth fully herein.

140.   Counterclaim-Plaintiffs are, and at all times alleged herein have been, the copyright owner and licensee of exclusive rights under United States copyright with respect to the copyright rights to the Works.  The Works that have been registered with the United States Copyright Office and have been infringed by Docs Dream are listed in **Exhibit A** attached hereto. The Works that currently have copyright registrations pending and have been infringed by Docs Dream are listed in **Exhibit B** attached hereto.

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

141.   Among the rights owned by Pastor Scott and the exclusive rights granted to Dolores Press under the Copyright Act are the exclusive rights to reproduce and distribute the Works registered under the copyrights.

142.   At all relevant times, Docs Dream was aware of Counterclaim-Plaintiffs' ownership of and exclusive rights to the Works registered under the copyrights.

143.   Without the permission of Counterclaim-Plaintiffs, Docs Dream, and each of them, has distributed and, on information and belief, continues to distribute the Works registered under the copyrights, and/or has made the Works registered under the copyrights available for distribution to others.  In doing so, Docs Dream has violated Counterclaim-Plaintiffs' exclusive rights of reproduction and distribution.  Docs Dream's actions constitute infringement of Counterclaim-Plaintiffs' copyrights and exclusive rights under copyright.

144.   The foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to the rights of Counterclaim-Plaintiffs.

145.   As a direct and proximate result of the foregoing wrongful acts of Docs Dream, Counterclaim-Plaintiffs have suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law.  Counterclaim-Plaintiffs are, therefore, entitled to injunctive relief prohibiting Docs Dream from distributing or copying any of the Works.

146.   As a direct and proximate result of Docs Dream's wrongful and intentional acts, Counterclaim-Plaintiffs are entitled to statutory damages of $150,000 pursuant to 17 U.S.C. section 504(c)(2) for each act of infringement.

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

## COUNTERCLAIM COUNT III

## TRADEMARK INFRINGEMENT

## (15 U.S.C. § 1114)

### (against Docs Dream)

147.   Counterclaim-Plaintiffs reallege and incorporate by reference all of the allegations set out in the previous paragraphs of these Counterclaims as if set forth fully herein.

148.   At all relevant times, Pastor Scott was the owner of the rights to the Mark, and Dolores Press was the exclusive licensee of rights to the Mark, such license being in writing.

149.   At all relevant times, Docs Dream had notice that Pastor Scott was the owner of the Mark and that Dolores Press was the exclusive licensee of all rights to the Mark.

150.   Docs Dream has counterfeited and used copies of the Mark in commerce for the purpose of promoting their FUMS Fund.

151.   The use of the Mark by Docs Dream has caused and is likely to cause confusion and mistake or to deceive, including with respect to the source or origin of the materials Docs Dream has promoted through the Mark.

152.   The infringing activities of Docs Dream has damaged and will continue to damage Counterclaim-Plaintiffs if Docs Dream is not permanently enjoined from using the Mark.  Counterclaim-Plaintiffs have no adequate remedy at law for the continuing damage caused by the infringing activities of Docs Dream.

153.   The infringing activities of Docs Dream has caused Counterclaim-Plaintiffs monetary harm.

154.   The actions of Docs Dream were taken in willful and malicious disregard of Counterclaim-Plaintiffs' rights.

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

### THIRD PARTY CLAIM COUNT I
### COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 106 & 501)
### (Against Robinson and Truth Seekers)

155.   Counterclaim-Plaintiffs reallege and incorporate by reference all of the allegations set out in the previous paragraphs of these Counterclaims as if set forth fully herein.

156.   Counterclaim-Plaintiffs are, and at all times alleged herein have been, the copyright owner and licensee of exclusive rights under United States copyright with respect to the copyright rights to the Works.  The Works that have been registered with the United States Copyright Office and have been infringed by Robinson and Truth Seekers are listed in Exhibit A attached hereto. The Works that currently have copyright registrations pending and have been infringed by Robinson and Truth Seekers are listed in Exhibit B attached hereto.

157.   Among the rights owned by Pastor Scott and the exclusive rights granted to Dolores Press under the Copyright Act are the exclusive rights to reproduce and distribute the Works registered under the copyrights.

158.   At all relevant times, Robinson and Truth Seekers were aware of Counterclaim-Plaintiffs' ownership of and exclusive rights to the Works registered under the copyrights.

159.   Without the permission of Counterclaim-Plaintiffs, Robinson and Truth Seekers, and each of them, has distributed and, on information and belief, continues to distribute the Works registered under the copyrights, and/or has made the Works registered under the copyrights available for distribution to others.  In doing so, Robinson and Truth Seekers have violated Counterclaim-Plaintiffs' exclusive rights of reproduction and distribution.  Robinson and Truth Seekers' actions constitute infringement of Counterclaim-Plaintiffs' copyrights and exclusive rights under

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

1 | copyright.

2 |     160.   The foregoing acts of infringement have been willful and intentional, in

3 | disregard of and with indifference to the rights of Counterclaim-Plaintiffs.

4 |     161.   As a direct and proximate result of the foregoing wrongful acts of

5 | Robinson and Truth Seekers, Counterclaim-Plaintiffs have suffered and will

6 | continue to suffer irreparable injury for which there is no adequate remedy at law.

7 | Counterclaim-Plaintiffs are, therefore, entitled to injunctive relief prohibiting

8 | Robinson and Truth Seekers from distributing or copying any of the Works.

9 |     162.   As a direct and proximate result of Robinson and Truth Seekers

10 | wrongful and intentional acts, Counterclaim-Plaintiffs are entitled to statutory

11 | damages of $150,000 pursuant to 17 U.S.C. section 504(c)(2) for each act of

12 | infringement.

13 | **THIRD PARTY CLAIM COUNT II**

14 | **COPYRIGHT INFRINGEMENT**

15 | **(17 U.S.C. §§ 106 & 501)**

16 | **(against Jones)**

17 |     163.   Counterclaim-Plaintiffs reallege and incorporate by reference all of the

18 | allegations set out in the previous paragraphs of these Counterclaims as if set forth

19 | fully herein.

20 |     164.   Counterclaim-Plaintiffs are, and at all times alleged herein have been,

21 | the copyright owner and licensee of exclusive rights under United States copyright

22 | with respect to the copyright rights to the Works.  The Works that have been

23 | registered with the United States Copyright Office and have been infringed by Jones

24 | are listed in **Exhibit C** attached hereto. The Works that currently have copyright

25 | registrations pending and have been infringed by Jones are listed in **Exhibit D**

26 | attached hereto.

27 |     165.   Among the exclusive rights granted to Counterclaim-Plaintiffs under

28 |

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY
CLAIMS

the Copyright Act are the exclusive rights to reproduce and distribute the Works registered under the copyrights.

166.   At all relevant times, Jones was aware of Pastor Scott's ownership and Dolores Press' exclusive rights to the Works registered under the copyrights.

167.   Without the permission of Counterclaim-Plaintiffs, Jones has distributed and, on information and belief, continues to distribute the Works registered under the copyrights, and/or has made the Works registered under the copyrights available for distribution to others.  In doing so, Jones has violated Counterclaim-Plaintiffs' exclusive rights of reproduction and distribution.  Jones' actions constitute infringement of Counterclaim-Plaintiffs' copyrights and exclusive rights under copyright.

168.   The foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to the rights of Counterclaim-Plaintiffs.

169.   As a direct and proximate result of the foregoing wrongful acts of Jones, Counterclaim-Plaintiffs have suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law.  Counterclaim-Plaintiffs are, therefore, entitled to injunctive relief prohibiting Jones from distributing or copying the Works registered under the copyrights.

170.   As a direct and proximate result of Jones' wrongful and intentional acts, Counterclaim-Plaintiffs are entitled to statutory damages of $150,000 pursuant to 17 U.S.C. section 504(c)(2) for each act of infringement.

## THIRD PARTY CLAIM COUNT III
## TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)
### (against Robinson and Truth Seekers)

171.   Counterclaim-Plaintiffs reallege and incorporate by reference all of the allegations set out in the previous paragraphs of these Counterclaims as if set forth

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

fully herein.

172.   At all relevant times, Pastor Scott was the owner of the rights to the Mark, and Dolores Press was the exclusive licensee of rights to the Mark, such license being in writing.

173.   At all relevant times, Robinson and Truth Seekers had notice that Pastor Scott was the owner of the Mark and that Dolores Press was the exclusive licensee of all rights to the Mark.

174.   Robinson and Truth Seekers, and each of them, have counterfeited and used copies of the Mark in commerce for the purpose of promoting their FUMS Fund.

175.   The use of the Mark by Robinson and Truth Seekers, and each of them, has caused and is likely to cause confusion and mistake or to deceive, including with respect to the source or origin of the materials Robinson and Truth Seekers have promoted through the Mark.

176.   The infringing activities of Robinson and Truth Seekers, and each of them, have damaged and will continue to damage Counterclaim-Plaintiffs if Robinson and Truth Seekers are not permanently enjoined from using the Mark. Counterclaim-Plaintiffs have no adequate remedy at law for the continuing damage caused by the infringing activities of Robinson and Truth Seekers.

177.   The infringing activities of Robinson and Truth Seekers have caused Counterclaim-Plaintiffs monetary harm.

178.   The actions of Robinson and Truth Seekers, and each of them, were taken in willful and malicious disregard of Counterclaim-Plaintiffs' rights.

## **DEMAND FOR JURY TRIAL**

179.   Defendants and Counterclaim-Plaintiffs hereby demand a trial by jury of this action.

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

**PRAYER FOR RELIEF**

**WHEREFORE, Defendants and Counterclaim-Plaintiffs respectfully request**
**from this Honorable Court the following relief:**

(A)   For an order that Plaintiff shall take no relief from its Complaint herein.

(B)   For a judicial declaration that Defendants and Counterclaim-Plaintiffs own the copyright rights in the Works and trademark rights in the Mark;

(C)   For a judicial declaration that the copyright rights in the Works have not been abandoned;

(D)   For judgment in favor of Counterclaim-Plaintiffs and against each of Counterclaim and Third-Party Claim Defendants;

(E)   Against all Counterclaim and Third-Party Claim Defendants, for an injunction providing in substance:

> Counterclaim and Third-Party Claim Defendants shall be and hereby are enjoined from directly or indirectly infringing Counterclaim-Plaintiffs' rights under federal or state law in the Intellectual Property, whether now in existence or later created, that is owned or controlled by Counterclaim-Plaintiffs (or any parent, subsidiary, or affiliate of Counterclaim-Plaintiffs), including without limitation by using the Internet or any online media distribution system to reproduce (i.e. download), to distribute (i.e. upload), or to make any of the Intellectual Property available for distribution to the public, except pursuant to a lawful license or with the express authority of Counterclaim-Plaintiffs.

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY CLAIMS

1          Counterclaim and Third-Party Claim Defendants

2          shall also destroy all copies of Counterclaim-

3          Plaintiffs' Intellectual Property that Counterclaim

4          and Third-Party Claim Defendants have downloaded

5          onto any computer hard drive or server without

6          Counterclaim-Plaintiffs' authorization and shall

7          destroy all copies of those downloaded recordings

8          transferred onto any physical medium or device in

9          Counterclaim and Third-Party Claim Defendants'

10         possession, custody, or control.

11    (F)    For an award of actual or statutory damages against Counterclaim and

12        Third-Party Claim Defendants, and each of them, for each infringement

13        pursuant to 17 U.S.C. section 504 and 15 U.S.C. section 1117

14    (G)    For an award of Defendants' and Counterclaim-Plaintiffs' costs and

15        attorneys' fees; and

16    (H)    For any such other or further equitable or legal relief and the Court

17        may deem just and proper.

18

19   Dated:  May 2, 2017           THE LEICHTER FIRM,

20                         A Professional Corporation

21

22

23

24                         Kevin J. Leichter, Esq.

25                         Attorneys for Defendants and
Counterclaim and Third Party Plaintiffs

26                         DOLORES PRESS, INC.
and MELISSA SCOTT

27

28

39

DEFENDANTS' ANSWER AND COUNTERCLAIMS AND THIRD PARTY
CLAIMS